| JAMES L. CANNELLA, Judge.
One of the Defendants in this eoncursus proceeding, Nina M. Kelly, Ph.D. (Kelly), appeals from the trial court judgment rendered in favor of the other Defendant, Bettye J. Gonzalez (Gonzalez), dividing the returned accumulated cash contributions made to the Teacher’s Retirement System of Louisiana (TRSL) by using the Sims[1] formula. For the reasons which follow, we reverse and remand.
Francisco M. Gonzalez, M.D. (Dr. Gonzalez), who died on November 26, 2002, was a contributing member of the TRSL plan during his first marriage to Gonzalez from 1959 to 1989 and his second marriage to Kelly from 1990 to 2001. Because Dr. Gonzalez died without a spouse or minor children, no survivor benefits were payable under the TRSL plan. Kelly was the named beneficiary in the event survivor benefits were not payable. On January 27, 2003, Kelly filed an Application for Refund of Deceased Member’s Contributions with TRSL.
On June 11, 2003, TRSL filed a Petition for Coneursus naming both Gonzalez and Kelly as Defendants. TRSL noted that *42 following Dr. Gonzalez’s [sdeath, under the terms of the plan, only a refund of his accumulated contributions ($49,020.39) was due his beneficiary. Although Kelly was the named beneficiary, TRSL was also in possession of a Consent Judgment, entered into in 1993 between Dr. Gonzalez and Gonzalez, following the termination of their marriage, recognizing the community interest of Gonzalez in Dr. Gonzalez’s TRSL plan. TRSL stated that although the Consent Judgment recognized Gonzalez’s community interest in the plan, it did not clearly state whether the return of accumulated contributions should be paid out pursuant to the Sims formula set out in the Consent Judgment. The formula in the judgment would result in Gonzalez receiving 39.9848%, or $19,600.70, of the accumulated contributions, whereas the plan had only an accumulated total of $23,522.53 as of the date of the termination of the community,[2] one-half of which, if payable to Gonzalez, would be $11,761.27. Accordingly, TRSL requested that it be allowed to deposit the greater of the two amounts, $19,600.70, in the registry of the court pending a determination of the rights of the parties to the funds. Both Gonzalez and Kelly answered the suits and filed memoranda in support of their positions. The case was submitted on the pleadings.
On February 25, 2004 the trial court ruled in favor of Gonzalez, finding that the accumulated contributions in the plan should be distributed in accord with the formula set out in the consent judgment, entitling Gonzalez to $19,600.70. On motion by Gonzalez for the trial court to amend the judgment as to phraseology only or, in the alternative, grant a new trial, the court issued an amended judgment on March 5, 2004, granting the relief sought by amending the phraseology of the judgment but not the substance.[3] It is from this judgment that Kelly appeals.
|4On appeal Kelly argues that the trial court erred in distributing the accumulated contributions according to the Consent Judgment by using the Sims formula because the Consent Judgment did not cover or apply to the situation here, with Dr. Gonzalez dying before he retired, with no survivor benefits due under the plan. Kelly argues that since the manner of distributing accumulated contributions was not covered by the Consent Judgment, the distribution should made in accordance with general legal principles. In this case, $23,522.53 was paid into the plan during the marriage of Dr. Gonzalez to Gonzalez. Therefore, Gonzalez is due one-half of that amount, $11,761.27.
The 52 page consent judgment provided in pertinent part:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the parties shall divide, pursuant to the SIMS formula, all pension and retirement benefit plans of any nature whatsoever owned by the parties in indivisión as community assets (excluding the above listed IRAs), except wife shall have as her sole and separate property the pension and retirement benefits in her name as a result of her employment with East Jefferson Hospital. Husband and wife agree to execute any and all *43 documentation necessary to effect any necessary transfers including, but not limited to, execution of QUALIFIED DOMESTIC RELATIONS ORDERS. In addition, each plan shall be divided using a valuation/termination date of April 12, 1989, plus accrued interest and dividends. Said pension and retirement benefit plans shall be divided as follows:
[[Image here]]
4. The Louisiana State University Unfunded System and the Teachers’ Retirement System of Louisiana are both payable through the Teachers’ Retirement System of Louisiana as a result of the consolidation/ merger of the two plans by state law. As a result, the Teachers’ Retirement System of Louisiana shall pay to Bettye Peeples Gonzales, effective at the time that Francisco M. Gonzales begins receiving said benefits, a portion of the accrued pension benefits of Francisco M. Gonzales in accordance with the SIMS formula as set forth below:
21.0 years Number of years in the Combined total of both plans
x % = Percentage amount due Bettye Peeples Gonzalez
1 ¡/Upon his retirement, Francisco M. Gonzales shall select option 1 of La. R.S. 17:641 and he shall designate Bettye Peeples Gonzalez as recipient of her pro-rata portion of the survivors benefits option so selected in the same proportion as set forth in the SIMS formula above. Furthermore, Francisco M. Gonzalez shall designate Nina K. Gonzalez as recipient of the remaining pro-rata portion of the survivors benefits option so selected in the same proportion as is due Francisco M. Gonzales as set forth in the SIMS formula above. 6. United States Navy Retirement System shall pay to Bettye Peeples Gonzalez effective at the time that Francisco M. Gonzalez begins receiving benefits, a portion of the accrued pension benefits of Francisco M. Gonzalez in accordance with the SIMS formula as set. forth below:
30 x 1 = 42.857% of pension benefits due
35 2 Bettye Peeples Gonzalez
Date of Marriage = 1959 to 1989
Date of projected retirement = September, 1993
Date of Naval Service = 1958 to 1993
Should Francisco M. Gonzalez select a supplemental or survivors benefit plan or option upon retirement from the U.S. Navy, he acknowledges that Bettye Pee-ples Gonzalez shall be entitled to 42.857% of any such benefits due from the U.S. Navy pension plan. The cost of any supplemental or survivors benefit plan, if selected by Francisco M. Gonzalez, shall be pro-rated between Nina K. Gonzalez (57.143%) and Bettye Peeples Gonzalez (42.857%). Bettye Peeples Gonzalez acknowledges that the decision to choose supplemental or survivors benefits under the U.S. Navy pension plan lies within the sole discretion or Francisco M. Gonzalez. Bettye Peeples Gonzalez’s date of birth is September 28, 1933.
As can be seen from the above quoted provisions, the parties did not contemplate, and the Consent Judgment did not address, the factual scenario that ultimately occurred, that Dr. Gonzalez would die pri- or to retiring with no survivor benefits due. The Consent Judgment contemplated and addressed two separate possible scenarios: (1) Dr. Gonzalez retires and commences drawing his retirement benefits or, (2) Dr. Gonzalez dies after retirement and after selecting Option One providing for survivor benefits. Each of these scenarios contemplated the distribution of retirement “benefits.” However, in this case, we are not called upon | fito determine how to distribute retirement benefits, we are being called on to determine how to distribute the accumulated contributions in the plan. The Consent Judgment does not *44 cover the distribution of principal contributions. Thus, in effect, this asset, the accumulated principal contributions in the plan, was omitted from the Consent Judgment. As an omitted asset, we must look to general legal principles to determine the proper distribution of the accumulated principal contributions.
A significant change in the law occurred in the area of community property partition of retirement benefits with the rendition of T.L. James & Co. v. Montgomery, 332 So.2d 834 (La.1976) and Sims v. Sims, 358 So.2d 919 (La.1978). Essentially these cases recognized and confirmed that pension “rights” earned during a community amounted to more than just the value of the contributions at the time of the termination of the marriage. The pension asset was comprised of two separate components, the cash contributions made by the employee and the right to receive benefits in the future. The Louisiana Supreme Court noted that both had a value to be divided upon termination of the community. In other words, the community interest in a pension plan included both the value of the cash contribution and the earned right to receive future benefits acquired during the community earning period.
The parties in the Consent Judgment likely recognized the state of the law at the time the judgment was entered and provided therein that the right to receive pension “benefits” would be divided in accord with the Sims formula. However, we are not herein called upon to determine the proper method for distributing Dr. Gonzalez’ earned pension benefits. Because of the peculiar facts of this case, with Dr. Gonzalez dying with no spouse or minor children, there are no pension “benefits” to be paid. That community asset, the right to pension benefits, turns out to have no value at all. Rather, the only part of the pension that Dr. Gonzalez, |7his estate, or his beneficiary is entitled to, is the return of the accumulated principle contributions that he made to the system over the years. On this basis, with a clear record of the amount and timing of all the payments, it can easily be determined what portion of the funds belonged to the first community between Dr. Gonzalez and Gonzalez.
As of April 12, 1989, the “valuation/termination date” agreed upon by the parties in the Consent Judgment, $23,522.53 had been paid into the plan. Gonzalez is entitled to no more than one half of the amount paid in during the community, $11,761.27. Any funds placed in the plan after that date were either the separate property of Dr. Gonzalez or community property of Dr. Gonzalez and Kelly. Gonzalez clearly has no right to any of those monies.
This is not a case where interest has been earned or dividends have been paid or even that the asset has increased in value. It is more like a non-interest bearing bank account where funds were deposited over an approximate 35 year period. With accurate records, a spouse would only be entitled to that portion of the funds earned and paid-in during the marriage.
Based on the foregoing, we reverse the judgment of the trial court and find that Gonzalez’s share of the accumulated contributions in the TRSL plan, placed in the registry of the court by TRSL in this concursus proceeding, is one-half of the amount paid in during the marriage, $11, 761.27, minus her pro-rata share of costs in both the district and appellate court. Kelly is entitled to the remainder of the proceeds minus her pro-rata share of the costs. The case is remanded for further proceedings consistent with this opinion. *45 Costs of appeal are assessed against Gonzalez.

REVERSED AND REMANDED.

. Sims v. Sims, 358 So.2d 919 (La.1978).

. The Consent Judgment specified the date of April 12, 1989 as the "valuation/termination date” for all retirement plans.

. In the first judgment the trial court stated that TRSL should apportion the refund by giving $19,600.70 to Gonzalez and $29,419.69 to Kelly. In fact, TRSL had already disbursed the amount not in dispute, $29,419.69 to Kelly and only the disputed amount, $19,600.70, had been deposited into the registry of the court. The amendment to the original judgment simply deleted reference to the amount due Kelly.